Stoll, Circuit Judge, dissenting.
I respectfully dissent. The FDA set a regulatory requirement that ABUK content in oxymorphone products be less than 0.001% (10 ppm). Mallinckrodt then claimed this requirement in the '779 patent. Not only does the FDA's mandate disclose every limitation of claim 1, but it is the only prior art reference that discloses the 0.001% oxymorphone ABUK limitation. Compare J.A. 2736, 2895, with '779 patent col. 37 ll. 58-59. Yet, the district court determined that this mandate did not disclose "anything substantive *1379 relevant to obviousness." Endo Pharm. Inc. v. Actavis Inc. , No. CV-14-1381, 2017 WL 3731001, at *7 (D. Del. Aug. 30, 2017) (" Decision "). It further erred by imposing a requirement that a reference must teach how to solve a problem to provide a motivation to combine, conflating enablement and reasonable expectation of success requirements with motivation. See id. at *12. Finally, the district court applied an erroneously heightened standard for reasonable expectation of success by requiring a "definitive solution" and proof of actual success. Id. at *9. The majority would disregard a number of these errors as harmless, affirming on the lack of a reasonable expectation of success. Given the significance of the court's errors, however, I cannot agree. While we owe deference to a district court's factual findings, such deference is not due where the trial court applies the incorrect standard to arrive at those findings. I would vacate the district court's decision and remand for a proper analysis under the correct legal standards.
The district court found that the FDA Communications do not disclose how to achieve low-ABUK oxymorphone, "nor do they disclose that this result had ever been achieved in the past.... There is simply no disclosure of anything substantive relevant to obviousness in these communications." Id. at *7. The district court further found that "[s]ince the FDA mandate was nothing more than a directive and provided no substantive teachings on how to produce low-ABUK oxymorphone, it cannot serve as a 'motivation to combine' in an obviousness analysis." Id. at *12. I fail to see how the FDA Communications do not disclose "anything substantive relevant to obviousness," when they disclose every limitation of claim 1 and are the only references that expressly disclose the limitation of oxymorphone ABUK content less than 0.001%. Id. at *7. It can hardly be disputed that the FDA communications motivated the actual development of the '779 invention. Indeed, as one of the inventors of the '779 patent testified, "no special attention was focused on" ABUK impurities prior to the FDA's structural alert. J.A. 3138 at 222:19-21.
The district court also erred by elevating the reasonable expectation of success standard to require that the prior art provide a definitive solution to the problem and proof of actual success. For example, in addressing Rapoport, which discloses a sulfur addition reaction followed by extraction, the court required proof that Rapoport's technique was actually used and worked. Specifically, the district court found that a person of ordinary skill would not have thought Rapoport promising because of its poor extraction partition ratio combined with "the lack of any examples of this method being used successfully ." Decision , 2017 WL 3731001, at *10 (emphasis added). This is the wrong standard. Had Rapoport disclosed successful use of sulfur addition and extraction to achieve ABUK levels of less than 10 ppm, it would anticipate the claims. As we have repeatedly held, obviousness requires only a reasonable expectation of success, not proof of actual success. See PAR Pharm., Inc. v. TWI Pharm. , Inc., 773 F.3d 1186, 1198 (Fed. Cir. 2014). The district court further erred by requiring proof of actual success regarding Dr. Gokel's proffered combination of Rapoport with conventional precipitation or chromatography. It discounted Dr. Gokel's suggestion as "purely hypothetical," stating that there "is no evidence anyone ever combined these methods prior to the invention date and Dr. Gokel himself never did any experiments to show that they would work." Decision , 2017 WL 3731001, at *10 (emphasis added). As mentioned above, obviousness does not require proof of successful use of a combination, and the court erred by requiring as much.
*1380 The district court may have recited the correct legal standard, but contrary to what the majority states, the district court certainly did not apply that standard in its analysis. See Majority Op. 1377-78. For example, the district court's finding that a person of ordinary skill would not have found Rapoport "promising" was partially based on "the lack of any examples of [Rapoport] being used successfully." Decision , 2017 WL 3731001, at *10. Further, the district court noted that the Macfarlan Smith experiment-the "single experiment on a different compound"-did not show ABUK reduction to below 0.001%. Id. In other words, there was no evidence that a sulfur addition technique actually worked. As mentioned above, a reasonable expectation of success does not require proof of actual success. These statements are thus not examples of the district court applying the correct standard, as the majority believes, and instead show the opposite. See Majority Op. 1377-78.
The district court similarly erred when considering Chapman. After reviewing testimony from both experts, the district court credited Mallinckrodt's expert, Dr. Davies, and stated that "even if a person of ordinary skill would view the oxycodone art as informative in researching possible solutions to reducing ABUK levels in oxymorphone, he would not find a definitive solution in Chapman ." Decision , 2017 WL 3731001, at *9 (emphasis added). This heightened requirement also goes beyond the reasonable expectation of success standard and constitutes legal error. Further, the district court's finding that a person of ordinary skill "would have understood that it would not be feasible to simply run [Chapman's] reaction to completion as Dr. Gokel suggested," focuses on the wrong question. Id. It is not required for catalytic hydrogenation to be run to completion in order to achieve 10 ppm ABUK. In fact, Dr. Gokel testified that Chapman itself-which achieved 5 ppm ABUK-was not run to completion: "Q: Now, did he run that part of the process to completion to convert the diol into the ABUK so he could then hydrogenate it and make the oxycodone drug? ... A: He did not, but he could have." J.A. 3019-20 at 103:22-104:6.
Finally, the district court erred by conflating the requirements of reasonable expectation of success and motivation to combine. The district court required that the FDA Communications teach how to achieve the claimed invention in order to provide a motivation to combine. See Decision , 2017 WL 3731001, *12. Whether a reference teaches how to achieve the claimed invention speaks to enablement or reasonable expectation of success-entirely separate inquiries from motivation to combine. "[O]ne must have a motivation to combine accompanied by a reasonable expectation of achieving what is claimed in the patent-at-issue." Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd. , 821 F.3d 1359, 1367 (Fed. Cir. 2016) (emphasis added). Motivation to combine refers to "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." KSR Int'l Co. v. Teleflex Inc. , 550 U.S. 398, 418, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). A reasonable expectation of success, on the other hand, addresses whether a person of ordinary skill in the art would have understood that the proposed combination or modification would have been reasonably likely to be successful. See, e.g. , UCB, Inc. v. Accord Healthcare, Inc. , 890 F.3d 1313, 1325-26 (Fed. Cir. 2018).
Our case law does not require that a reference teach how to achieve the claimed invention in order to provide a motivation to combine. The FDA Communications disclose all the limitations of claim 1. They also disclose a reason to modify Weiss, Chapman, or Rapoport to achieve ABUK
*1381 levels of less than 10 ppm: the FDA required such levels because it had determined that ABUK levels higher than 10 ppm were genotoxic. If these communications also taught "how the goal is attained," they would anticipate the asserted claims-we would have no need to address obviousness.
For all these reasons, I would vacate the district court's decision and remand to allow the district court to apply the correct obviousness test and properly consider the role of the FDA mandate-the sole reason for the '779 patent's existence-in the obviousness analysis. This is not a typical Hatch-Waxman case where the patentee provided the public with a new drug, formulation, or manufacturing process. While Mallinckrodt's patent specification is directed to a specific process for achieving the FDA's objective, Mallinckrodt did not claim that process. Mallinckrodt instead claimed the FDA mandate. The FDA sought to make oxymorphone safer for the public and Mallinckrodt took advantage by claiming the directive itself, securing exclusive rights to a drug first approved in 1959. This is not the type of innovation that the patent system and the obviousness standard were designed to protect.